UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:24-CR-12 |
| | ) | |
| ADAM LEE TAYLOR | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by its counsel, Tina L. Nommay, Acting United States Attorney for the Northern District of Indiana, through Zachary D. Heater, Assistant United States Attorney, and submits this memorandum in advance of Defendant Adam Lee Taylor's sentencing.

## I.    Introduction

Defendant pled guilty to one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252A.   There are no objections to the Presentence Investigation Report ("PSR").   The parties agree that with a total offense level of 33 and a criminal history category of I the PSR correctly calculates the Guidelines sentence range at 135 to 168 months of imprisonment.   For the reasons articulated below, the government respectfully recommends the Court accept the Plea Agreement and impose a sentence of 135 months imprisonment followed by a term of supervised release of 5 years.

II.    **Factual Background**

**A. Offense Conduct**

In December 2022, FBI agents in New York gained access to a group chat on the encrypted messaging application Signal that was used for trading child pornography.  Further investigation revealed that throughout November 2022, Defendant Adam Lee Taylor, of Crown Point, had participated in the Signal chat by distributing, soliciting, and discussing CSAM with the group's members.  *See* D.E. 39, at ¶ 15-26.

On November 8, 2022, Defendant shared a series of video clips containing child pornography with the Signal group chat.  As detailed in the PSR, these included videos depicting the graphic sexual abuse of very young children, including the following:

- A one minute and five-second-long video that depicts a naked white adult male kneeling over a sleeping infant with a pacifier in its mouth. The male is masturbating over the infant's face. At approximately the 50-second mark in the video, the adult male ejaculates on the infant's face and mouth causing the infant to spit out its pacifier and rub its face in a visible discomfort.  *Id.* at ¶ 22.

- A 47-second-long video that depicts a naked white adult male in the bathtub with a naked white male toddler. The adult male appears to have an uncircumcised penis. The adult male and the toddler are facing one another. The adult male leans into the child and begins to stroke and fondle the toddler's penis with his left thumb and index finger. The adult male then

places his left index finger into the toddler's mouth, rubbing it all over the inside of the toddler's mouth. *Id.* at ¶ 23.

- A 14-second long video of a naked white male child approximately eight years old, kneeling and performing oral sex on an adult male. The adult male's penis and hand are visible in the video. The child's mouth and right hand are on the male's penis. At about the nine second mark of the video the adult male grabs the back of the child's head and rubs it until he appears to ejaculate in the child's mouth just as the video ends. *Id.* at ¶ 20.

In addition, Defendant actively solicited his preferred genre of CSAM from members of the group. Defendant repeatedly expressed his interest in obtaining additional nepiophilia material, or CSAM that depicts the sexual abuse of infants and toddlers. *Id.* at ¶ 16 ("any good nepi videos?") and 26 (stating interest in "[ages] 0+ mostly nepi" content).

Defendant also possessed additional child pornography on his smartphone. *Id.* at ¶ 29-32. Notably, the forensic extraction of Defendant's phone revealed a video clip depicting an adult performing a sex act with an infant in a manner nearly identical to that depicted in a video Taylor distributed in the Signal chat. *Id.* at ¶ 30, 22.

## B. Procedural History and Plea Agreement

Defendant was indicted on February 22, 2024, for Distribution of Child Pornography (Count 1) and Possession of Child Pornography (Count 2).

D.E. 1.   The parties entered into a Plea Agreement, D.E. 28, and on December 3, 2024, Defendant entered a plea of guilty to Count 1 of the Indictment.   The Court conditionally accepted Defendant's plea pending its acceptance of the Plea Agreement.   D.E. 31.

The Plea Agreement contains both binding and non-binding provisions. If accepted, the agreement would bind the Court to impose a sentence of imprisonment no greater than the minimum of the applicable Guidelines range, which the parties agree is 135 months.   D.E. 28 at ¶ 7(c).[1]   By statute, Defendant must be sentenced to between 60 and 240 months.   18 U.S.C. § 2252A(b)(1).   If the Court rejects the Plea Agreement, it must allow Defendant to withdraw his guilty plea.   Fed. R. Crim. P. 11(c)(1)(C).

## III.   <u>Sentencing Recommendation</u>

Applying the sentencing factors under 18 U.S.C. § 3553(a), the Court should accept the Plea Agreement and impose a Guidelines prison sentence of 135 months followed by a 5-year term of supervised release.

---

[1] The parties and the Probation Department are in agreement as to the Guidelines calculation, which produces a range of 135 to 168 months.   *See* D.E. 28 at ¶ 7(d); D.E. 39 at ¶ 34 (Probation concurring).   However, this agreement is not binding on the Court, and should the Court arrive at a different Guidelines calculation, the binding provision of the agreement would remain in effect (i.e., the Court would be bound to impose a sentence at or below the minimum of the range as calculated by the Court).

4

***Nature and Circumstances of the Offense.*** Defendant distributed and possessed videos depicting the graphic sexual abuse of infants and toddlers—some of the darkest and most corrosive CSAM found on the internet. Far from being a passive consumer, Defendant voluntarily contributed to the supply of such material by distributing multiple videos to the dozens of Signal chat participants, who could then freely view and save them.  D.E. 39 at ¶ 17. Defendant apparently required no enticing or encouragement to do this.

Defendant also solicited group members for nepiophilia content while attempting to help group members identify and locate particular CSAM videos of interest. *Id.* at ¶ 24-26.  On one such occasion, Defendant volunteered that he was participating in the Signal chat despite getting "worried" when certain accounts containing CSAM got "nuked," such that he "lost all the good stuff," and deleted certain accounts. *Id.* at ¶ 26.  In short, Defendant's behavior demonstrates he was an incorrigible consumer and collector of CSAM with a pronounced interest in increasing others' access to and awareness of CSAM, including through distribution.

The Guidelines calculation appropriately accounts for the aggravating and mitigating aspects of Defendant's conduct and does not overstate the seriousness of his offense.  A sentence within the Guidelines range is therefore appropriate. *See, e.g.*, *United States v. Eash*, 679 F. Supp. 3d 768, 770-72

5

(N.D. Ind. 2023) (Leichty, J.) (sentencing defendant for receipt of child pornography to a sentence near the low end of the Guidelines and declining to vary downward or disregard commonly-applied enhancements where the rationale justifying each enhancement applied to defendant's conduct); *United States v. Smith*, 2019 U.S. Dist. LEXIS 190757, at *15 (N.D. Ind. Nov. 4, 2019) (Brady, C.J.) ("the Court rejects the invitation . . . to categorically reject the application of the Sentencing Guidelines and enhancements for child pornography offenses. Rather, when there exists a factual basis to apply the relevant Guidelines they will be applied and taken into account when sentencing. . . . The Court will then impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2).") (citing *United States v. Booker*, 543 U.S. 220, 264 (2005)).

***Defendant's History and Characteristics.*** Defendant struggled to navigate his parents' divorce, grew up with an alcoholic mother, and faced challenges related to his sexuality. Defendant also reports being a victim of sexual abuse. D.E. 39 at ¶ 63-72. On the other hand, Defendant appears to have had his material needs met, is well-educated, and has been gainfully employed or in school for most of his adult life. *Id.* at ¶ 76-80. There is no indication that Defendant's upbringing deprived him of the ability to function as a productive, law-abiding member of society. Like most defendants in his

6

position, Defendant has no criminal history. *See* U.S. SENTENCING COMMISSION, FEDERAL SENTENCING OF CHILD PORNOGRAPHY: NON-PRODUCTION OFFENSES (June 2021), at 24 (In FY2019, 69.1% of non-production federal child pornography offenders had zero criminal history points, in contrast with only 39.1% of other federal offenders).

It bears emphasis that Defendant's difficulties as a child and young adult do not excuse his decision to contribute to the ongoing victimization of other children. The Court can reasonably expect that a victim of childhood abuse should be uniquely attuned to the harm his actions could cause for other child victims. *See United States v. Stinefast*, 724 F.3d 925, 932 (7th Cir. 2013) (affirming above-Guidelines sentence based in part on district court's conclusion that if defendant was sexually abused as a child, he "was more deserving of punishment because he continued to develop the market for child pornography despite knowing the harm inflicted on the children involved in its production and distribution"). A sentence at the low end of the Guidelines range appropriately balances any mitigating features of Defendant's personal characteristics against the seriousness of his offense.

***Deterrence, Respect for the Law, and Just Punishment.*** A 135-month sentence is sufficient but not greater than necessary to deter this Defendant from reengaging in criminal conduct. In his Signal messages,

Defendant demonstrated just how little he was deterred from sharing and collecting child pornography despite his awareness of the risks involved.   D.E. 39 at ¶ 24-26 ("*I got nuked on tele, anyone else, lost all the good stuff, now I have this and [i]t seems no one is sharing lately?*" . . . "*I found it tele but got nuke [sic] and got worried so I deleted everything, I'm a super pedo perv into 0+ mostly nepi.*").   Beyond flagrantly disregarding the illegality of his conduct, Defendant showed the risk of detection was insufficient to quash his need to seek out CSAM on new platforms.

The proliferation of free, easily downloadable encrypted messaging platforms has revolutionized the way sex offenders exchange CSAM.   As this case well demonstrates, offenders like Defendant help memorialize the sexual abuse of child victims when they broadcast CSAM to groups of strangers, exponentially increasing the number of copies of such material available for viewing and saving, and virtually guaranteeing that it will survive indefinitely on personal devices and web servers all over the world.   In this way, Defendant furthered the "vicious cycle of easy access" in which large amounts of child pornography can be acquired at little or no cost and "in an anonymous indiscriminate manner."   *Eash*, 679 F. Supp. 3d at 772.

Substantial prison sentences are necessary to disabuse Defendant and the public of any notion that such conduct is harmless online activity.   Courts

have long recognized that substantial prison sentences are needed to match the seriousness of the harm caused by CSAM distribution, which "directly victimizes the children portrayed." *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) (citing *New York v. Ferber*, 458 U.S. 747, 759 (1982) (CSAM creates a "permanent record" of child sex abuse, "and the harm to the child is exacerbated by [its] circulation.")); *see also United States v. Gross*, 437 F.3d 691, 693 (7th Cir. 2006) (affirming statutory maximum sentence for distribution, noting "the dissemination of child pornography, even by those . . . who had no involvement in its production, causes the child victims continuing harm by haunting the children in years to come") (internal quotations omitted). Accordingly, district courts "ought to give respectful attention to Congress' view that [child pornography crimes] are serious offenses deserving serious sanctions." *United States v. Grigg*, 442 F.3d 560, 564-65 (7th Cir. 2006) (affirming low-end Guidelines sentence for CSAM possession).

A term of 135 months' imprisonment is a reasonable and just sentence. Here, the Guidelines appropriately reflect the seriousness of Defendant's offense, and a 135-month sentence is sufficient to provide specific and general deterrence and to promote respect for the law. A sentence at the low end of the Guidelines range sufficiently accounts for Defendant's background without undermining the purposes of sentencing set forth in section 3553(a).

Therefore, the government respectfully requests  a sentence of 135 months' imprisonment followed by a 5-year term of supervised release.

## IV.    **Restitution and Assessments**

Defendant has agreed to pay restitution to the victims of his offense. D.E. 28 at ¶ 7(f).   However, the government has not received any requests for restitution from the victims of Defendant's conduct.   D.E. 39 at ¶ 36. Therefore, no restitution should be ordered.

Separate from restitution, Defendant must pay certain assessments required under Title 18:

**18 U.S.C. § 3013**:   Defendant must pay the mandatory special assessment of $100.

**18 U.S.C. § 3014:**   Defendant must pay the mandatory $5,000 assessment required under the Justice for Victims of Trafficking Act of 2015 because he is a non-indigent person convicted of a qualifying offense.[2]   Courts must consider indigency in two senses, both "whether the defendant is eligible for appointed counsel at the time of sentencing and whether the defendant generally lacks the resources to provide for himself going forward." *United*

---

[2] Assessments under this section are paid into a Domestic Trafficking Victims' Fund, which is administered by the Attorney General to award grants or enhance programming for crime victims.   *See* 18 U.S.C. § 3014(e).

*States v. Otradovec*, 72 F.4th 794, 797 (7th Cir. 2023).   Here, Defendant has retained private defense counsel for the entirety of this case.   Based on the undisputed financial information set forth in the PSR, Defendant has modest liquid assets presently available to him.   D.E. 39 at ¶ 81-82 (assets include checking account balance and cash); *see also* D.E. 13 (Pretrial Services Report) at 3 (setting forth assets including cash, checking account, and a vehicle). Looking forward, Defendant has a bachelor's degree and a history of relatively high-paying employment.   D.E. 39 at ¶ 78-80; D.E. 13 at 2-3.

**18 U.S.C. § 2259A:**   Finally, the Court "shall" order Defendant to pay an assessment of up to $35,000 under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018.   The statute does not establish a minimum amount required.   Because there are no requests for restitution in this case, the government respectfully submits that Defendant should be ordered to pay a section 2259A assessment of $1,000 to further support the government's efforts to compensate victims of child pornography crimes.[3]

---

[3] All assessments collected under 18 U.S.C. § 2259A are deposited into the Child Pornography Victims Reserve. 18 U.S.C. § 2259B(a). Money from this reserve fund is then made available to other victims of trafficking of child pornography. *Id.* § 2259(d). A monetary penalty and recovery under this statute is separate and distinct from restitution, as it does not require identification of a victim and proof of losses. *See United States v. Madrid*, 978 F.3d 201, 205 (5th Cir. 2020).

## IV.    <u>Forfeiture</u>

Defendant has agreed not to contest the forfeiture of three electronic devices involved in this case.    D.E. 28 at ¶ 7(h).    The Court entered an amended preliminary order of forfeiture on February 13, 2025.    D.E. 36.    The government will seek a final order of forfeiture when the appropriate notice period has ended.

## V.    <u>Conclusion</u>

For the reasons set forth above, the government respectfully requests that the Court (a) sentence Defendant to a term of imprisonment of 135 months, followed by a term of supervised release of 5 years; (b) order Defendant to pay monetary assessments pursuant to 18 U.S.C. § 3013, 3014, and 2259A as set forth above; and (c) enter an order forfeiting certain electronic devices to the government.

Respectfully submitted,

TINA L. NOMMAY
ACTING UNITED STATES ATTORNEY

BY:    <u>*/s/ Zachary D. Heater*</u>
Zachary D. Heater
Assistant United States Attorney
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
Tel.: (219) 937-5500
E-mail: Zachary.Heater@usdoj.gov